UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE THE MATTER OF: | ) |
| | ) |
| SYLVESTER D. WINCE, | )    19 CV |
|            Plaintiff, | ) |
| vs. | )    Judge |
| | ) |
| CBRE, INC.,  a Delaware Corp., ERNIE SANCHEZ | )    Maj Judge |
| Individually and in his Official Capacity as Alliance | ) |
| Director of Facilities at CBRE, RICHARD SAULIG | ) |
| Individually and in His Official Capacity as Director of | ) |
| Facilities at CBRE, SEAN HOLLAND, Individually and | ) |
| In His Official Capacity as Senior Manager of Facilities | ) |
| At CBRE, PEDRO REGDOV, Individually and in His | ) |
| Official Capacity as Alliance Director of Facilities at | ) |
| CBRE, JOE HERNANDEZ, Individually and in His | ) |
| Official Capacity as Senior Manager of Facilities at | ) |
| And MAYA NASH, Individually and in Her Official | ) |
| Capacity as Human Resources Manager at CBRE, | ) |
|            Defendants. | ) |

## COMPLAINT

**COMES NOW THE PLAINTIFF**, **SYLVESTER WINCE,** by and through his counsel, Calvita J. Frederick and Associates, and complaining of the Defendant, CBRE, INC, a Delaware Corporation, and ERNIE SANCHEZ, Individually and in His Official Capacity as Alliance Director of Facilities, RICHARD SALIG, Individually and in His Official Capacity as Director of Facilities, SEAN HOLLAND, Individually and in His Official Capacity as Senior Manager of Facilities, PEDRO REGDOVA,  Individually and in His Official Capacity as Alliance Director of Facilities, JOE HERNADEZ,  Individually and in His Official Capacity as Senior Manager of Facilities, and MAYA NASH, Individually and in Her Official Capacity as Human Resources Manager, alleges as follows:

## THE PARTIES

1. **PLAINTIFF SYLVESTER WINCE** ("SYLVESTER" or "Plaintiff") is a male, Black citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago.

2. **DEFENDANT CBRE, INC ("CBRE" or "Defendant"),** is **a Delaware Corporation**, licensed to do business within the State of Illinois having its principal office in Los Angeles, California and having a location within the State of Illinois, County of Cook, at 541 North Fairbanks, Chicago, Illinois.

3. **DEFENDANT ERNIE SANCHEZ** ("ERNIE" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and the current Alliance Director of Facilities at CBRE.

4. **DEFENDANT PEDRO REGDOV** ("PEDRO" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and is/was Sylvester's Alliance Director of Facilities senior manager at CBRE.

5. **DEFENDANT MAYA NASH** ("MAYA" or "Defendant(s)") is a female, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and was Sylvester's Human Resources ("HR") manager at CBRE.

6. **DEFENDANT RICHARD SAULIG** ("RICHARD" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and was Sylvester's Alliance Director of Facilities at CBRE.

7.  **DEFENDANT SEAN HOLLAND** ("SEAN" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and was Sylvester's Senior Manager of Facilities at CBRE.

8.  **DEFENDANT JOE HERNADEZ** ("JOE" or "Defendant(s)") is a male, Hispanic citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and was Sylvester's Senior Manager of Facilities at CBRE.

9.  CBRE employs more than 500 people at their Chicago location.

10. At all relevant times, Defendants Ernie, Pedro, Maya, Richard, Sean and Joe were employed by Defendant CBRE, and were "employees" of Defendant CBRE within in the meaning of 42 U.S.C. § 2000e(f).

## JURISDICTION AND VENUE

11. The claims against the Defendants herein are based upon race discrimination (Black) pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981 which prohibits discrimination on the basis of race and further prohibits retaliation for opposing or making charges regarding discrimination.

12. Jurisdiction is conveyed upon this Court as the claims arise under the laws of the United States of America pursuant to 28 U.S.C. § 1343.

13. Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 as SYLVESTER'S residence, at all times pertinent hereto, and Defendant's business, as well as all events giving rise to this claim occurred within the counties served by this Court.

## NATURE OF THE ACTION

14. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* which prohibits discrimination on the basis of race and further prohibits retaliation

3

for opposing or making charges regarding discrimination, and operating as a witness for another employee who file a discrimination charge against CBRE, and 42 U.S.C. § 1981 and 42 U.S.C. § 1983 to redress violations of Plaintiffs' Equal Protection rights guaranteed under the Fourteenth Amendment of the United States Constitution.

15. Defendants engaged in deliberate and unlawful policies, patterns, and employment practices intended to and did create and proliferate a hostile and abusive work environment based on race that included harassment, intimidation, and retaliation.

16. This is an action also brought under Title VI which prohibits discrimination under any program or activity receiving federal financial assistance.

## FACTS RELEVANT TO ALL COUNTS

17. SYLVESTER has been employed by CBRE since October 31, 2001 when he was hired as an Maintenance Mechanic for Northwestern Hospital. In 2007 SYLVESTER was promoted to the position of Stationary Engineer. In 2010 CBRE took over the facilities management operations for Northwestern Hospital.

18. SYLVESTER works in the Feinberg Galter Building located at 251 E. Huron Street, Chicago, Illinois. Sylvester has a Bachelor of Science degree from Northwestern University (2010) an was working on Project Management Certification.

19. SYLVESTER is a member of International Union of Operating Engineers Local 399, and his position is subject to a Collective Bargaining Agreement. ("CBA")

20. At all times material to this Complaint, SYLVESTER proved his industriousness, presented and represented himself in an orderly and respectful manner, and commanded and continues to command the respect of his fellow employees.

21. Additionally, SYLVESTER demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

22. The plant operations Feinberg Galter consists of 3 departments: controls, boiler operations and systems. SYLVESTER works in all three departments as assigned and needed.

**Denial of Overtime**

23. The CBA provides for overtime opportunities based upon seniority. SYLVESTER is the engineer with the most seniority that works in Controls.

24. Since March of 2018, SYLVESTER has been denied more than 19 overtime opportunities in Controls.

25. Pedro, Ernie, has final decision-making authority for overtime opportunities in Controls. Pedro has failed and refused to meet with SYLVESTER or to discuss the denial of overtime opportunities to SYLVESTER.

26. SYLVESTER has filed several grievances with the Union related to denial of overtime opportunities but to no avail.

**Failure to Promote**

27. In 2017 SYLVESTER applied for Assistant Chief position for 259 Building, a new construction located 259 E. Huron, Chicago. The Engineer who previously occupied that position, Andrew Breniac, stepped down. CBRE management, including Frank Unknown, and Sean, and begged Andrew to take his position back.

28. SYLVESTER applied and went for an interview for Andrew's position, but was denied the promotion. Management, including Richard and Pedro said that SYLVESTER was not what they were looking for and that SYLVESTER needed more experience and leadership skills.

29. Andrew was brought back and in currently in the Assistant Chief position.

30. Prior to occupying the position of Assistant Chief Andrew worked in refrigeration, and had never worked in boiler operations, systems, chillers, or controls.

31. SYLVESTER has more seniority with CBRE than Andrew in terms of plant operations and SYLVESTER has works in all three departments and has experience in boiler operations, systems, controls and chillers.

32. Andrew was first hired into the Assistant Chief position in 2015. SYLVESTER applied for the position of Assistant Chief in 2015 and was denied the promotion. The reason given to Sylvester for the denial of the promotion was his lack of experience. At that point Andrew also had no experience in that position

33. Difference in pay between SYLVESTER's position and the Assistant Chief's positions is approximately $4.00 per hour.

34. In 2016 CBRE hired Joe as Chief of Plant Operations. Joe came from Controls working right alongside SYLVESTER. Unlike SYLVESTER, Joe has no credits, certificates, or commendations but he was good friends with Sean at CBRE, and SYLVESTER had more seniority than Joe. Sean had final decision-making authority for the promotion to Chief of Plant Operations in 2016.Joe did not stay long in the position of Chief of Plant Operations.

35. When Joe left, SYLVESTER applied for Joe's position and was also was denied the promotion. No reason was given for the denial of this promotion.

36. There are no Blacks on the management staff at CBRE.

37. Richard has final decision-making authority for promotions

**Failure to Award Holiday Time Off**

38. SYLVESTER has applied but in 17 years he has never been allowed holiday time off for Christmas Eve, Christmas Day, July 4th, New Year's Eve or New Years Day.

6

39. Other non-Black employees with less seniority and credentials got to enjoy those holidays off with their families. As relates to this charge for the year 2017, Cirian Officer, was given the holiday time off instead of SYLVESTER.

40. On other occasions, SYLVESTER was told he was denied the holiday time off because he incorrectly filed out the paperwork request for time off, which reason was a pretext.

41. Sean has final decision-making authority for holiday time off.

**Hostile work Environment**

42. On several occasions racial slurs have been written on Sylvester's tool chest, including "Nigger you don't belong", and "Nigger we are watching you".

43. On other occasions SYLVESTER'S Ernie suggested that he take a class in furtherance of promotional opportunities at CBRE. SYLVESTER took the class and paid for the class, a Project Manger's course taken in June of 2018, and Northwestern Hospital, not CBRE, reimbursed him.

44. Thereafter, Ernie suggested SYLVESTER look outside of CBRE for a project manager's position. Ernie later backtracked and said CBRE was going to need project managers "in the not too distant future", but AT&T and IBM needed Project Managers now. SYLVESTER took Ernie's suggestion as an indication that there is no likelihood of promotion for him if he stays at CBRE.

45. On several occasions SYLVESTER is required to work systems all week while a white temporary employee, Troy Nagle who is still on probation is working Controls. Troy is allowed to sit at a computer while Sylvester, a senior engineer is required to respond to emergencies and client request which a senior engineer should not be required to do.

46. SYLVESTER is required to repair equipment left from an off shift without documentation, if he finds that equipment in the morning, while the person who left the equipment is responsible for the repair, SYLVESTER's managers, including Joe require SYLVESTER to do the work.

47. SYLVESTER is required to plunge toilets while two new hires are doing the work that Sylvester has done for the past 2.5 years.

48. SYLVESTE has reported the issues of harassment, intimidation, racial slurs, failure to promote and failure to award overtime to Human Resources at CBRE, including to Maya, but to no avail.

49. SYLVESTER believes that he is required to do work below his grade level and assigned menial tasks in retaliation for his complaining about discrimination.

50. The pervasive harassment, intimidation, and violence in the workplace aimed at Plaintiff was meant to intimidate and force Plaintiff and other Black employees into accepting their status as a second-class citizen within CBRE, or to resign.

51. Defendant CBRE created a negative workplace environment for Plaintiff through their actions and/or inactions, which conduct constituted a Title VII violation against the Plaintiff and created intolerable working conditions.

52. In response to the hostile, abusive and negative work environment during his day-to-day activities, Plaintiff could only either continue to suffer or be constructively discharged.

53. No other white stationary engineer is required to do the menial work below their grade level that SYLSVESTER is required to do on a daily basis.

54. Sean, Pedro, Richard, Ernie, Maya and Joe, all operated in such manner as to create a hostile work environment for SYLVESTER.

**COUNT I**
**VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE**
**AGAINST CBRE**

55. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 51 above.

56. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> **"(a) Employer practices**
> a.    It shall be an unlawful employment practice for an employer—
>> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

57. Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon race and retaliation with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this Complaint as Exhibit "A".

58. Plaintiff has filed this cause pursuant to a "Right to Sue Letter" issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this complaint as Exhibit "B".

59. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) as provided by Title VII.

60. The Defendant at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

61. During the course of his employment the Plaintiff came under the supervision of Ernie, Richard, Sean, Joe, Maya, and Pedro, who subjected SYLVESTER to differential terms and conditions of employment because of his race.

62. The Defendant CBRE'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race in direct violation of Title VII.

63. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

64. WHEREFORE, Plaintiff SYLVESTER WINCE, demands judgment against the Defendant, CBRE, as follows:

      A.    For retroactive promotion back to 2015, with all back pay, benefits and other emoluments of employment;

      B.    For an award of $300,000 in compensatory damages suffered because of the discrimination;

      C.    Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

      D.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

      E.    For such other and further relief, as is just and equitable.

## COUNT II
## VIOLATION OF 42 USC § 1981 – AGAINST CBRE, JOE, PEDRO, ERNIE, RCHARD, SEAN AND MAYA

65. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 51.

66. The claims against the Defendants herein are based upon discrimination based upon race.

67. Jurisdiction arises pursuant to 28 U.S.C. § 1343.

68. Venue is appropriate as SYLVESTER'S residence, and Defendants residence and business, as well as all events giving rise to this claim occurred within the counties served by this Court.

69. Title 42 U.S.C. § 1981 provides in pertinent part:

70. "(a) Statement of equal rights

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes,

licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination …"

71. At all times herein mentioned, SYLVESTER was a person protected by the provisions of 42 U.S.C. § 1981.

72. CBRE deprived SYLVESTER of his rights to make and enforce contracts granted to him by statutes of the United States when they deliberately and intentionally discriminated against him based upon his race by setting in place a campaign designed to, and did, result in SYLVESTER'S harm.

73. Defendant CBRE maintains a widespread practice of treating Black employees, (based upon their race) especially SYLVESTER less favorably than his co-workers who are not Black.

74. Although the practice is not authorized by written law or express company policy, the practice of discrimination in the nature of disparate treatment, denial of promotion, denial of overtime and holiday time off, and the creation of a hostile work environment is so permanent and well-settled as to constitute a custom and/or usage with the force of law.

75. Defendants CBRE practices represent a widespread practice of racial discrimination, especially towards Blacks.

76. SYLVESTER was treated less favorably than his colleagues because he is Black, caused by an existing, unwritten, unconstitutional policy, which is directly attributable to a final policymaker.

77. The final policy makers for Defendant CBRE include Joe, Pedro, Ernie, Sean, Richard, and other members of management, including Maya in HR.

11

78. SYLVESTER alleges a pattern of conduct that gives rise to a plausible claim that an unconstitutional custom, pattern or practice exists. Specifically Blacks who occupy the position of Stationary Engineering are treated differently and denied the same opportunities as their Caucasian counterparts because of discriminatory animus and intent.

79. This supports SYLVESTER'S claim of having suffered adverse employment actions by conduct tantamount to bullying, arbitrary and inconsistent directives, demeaning and humiliating assignments, intentional and public humiliation, unwarranted discipline, denial of overtime, promotion and holiday time off.

80. SYLVESTER has been employed by CBRE since October of 2001 when he entered into an agreement for employment with Northwestern Hospital, CBRE's predecessor.

81. Plaintiff at all times material to this Complaint proved his industriousness, presented and represented himself in an orderly and respectful manner and commanded and continues to command the respect of his fellow employers.

82. Additionally, SYLVESTER demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

83. Rather than support SYLVESTER in his position of *Stationary Engineering*, Defendant CBRE intentionally discriminated against SYLVESTER in the following ways: by refusing to promote him to the Assistant Chief position in 2015; by refusing to promote him to Chief of Plant Operations in 2016; by refusing to promote SYLVESTER to Assistant Chief position for 259 Building; by refusing him overtime opportunities more than 18 times in 2018; by refusing to ever allow him to have Christmas, Christmas Eve, July 4th, New Year's Eve, or New Year's Day and other holidays off; by insisting he perform menial and demeaning task below his grade level in favor of new hires who are still on probation; by insisting he perform work left by others or be

accused of insubordination or refusal to work; by retaliating against him for serving as a witness for another employee who had complained of discrimination; and for retaliating against him for complaining about discrimination against him while working at CBRE.

84. CBRE's intentional discriminatory animus through the actions of its employees Joe, Pedro, Ernie, Sean, Richard, and other employees in management all based upon race.

85. CBRE knew about or reasonably should have known about the hostile work environment created by Joe, Pedro, Ernie, Sean, Richard, and other management employees, including Maya in HR and failed to take appropriate remedial action to protect SYLVESTER.

86. Joe, Pedro, Ernie, Sean, Richard, and other members of management, including Maya in HR, intentional discrimination interfered with SYLVESTER'S right to enforce his agreement with CBRE including the performance, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

87. As a result of the Defendant CBRE'S, discrimination based upon race, SYLVESTER has suffered injury to his career, as well as emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, and other losses for which he is entitled to compensatory damages in accordance with 42 U.S.C. § 1981.

    a.     WHEREFORE, Plaintiff SYLVESTER demands judgment against the Defendant CBRE, as follows:

        A.     Actual damages in the amount of lost wages and back pay from 2015 to present, including any differential in pay as a result of the failure to promote;

        B.     Actual damages for lost wages due to denial of overtime opportunities and holiday time off;

C.   Compensation for loss of employee benefits, including medical, dental, life, 401K, pension, stock options and retirement benefits;

D.   Additional compensatory damages for Plaintiff's mental anguish, pain, and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

E.   Additional compensation for damages to and the loss of SYLVESTER'S career;

F.   For punitive damages;

G.   All reasonable and necessary attorney's fees incurred as specified;

H.   All costs of court; and

I;   Such other and further relief as this court deems just and proper.

## COUNT III
## RETALIATION AGAINST CBRE

88. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 and inclusive.

89. Plaintiff has been threatened, subjected to racial and intimidating and derogatory statements, denied opportunities to complete his work, repeatedly harassed about his whereabouts at certain times during the day by his managers Niksic and Joe, subjected to intense scrutiny in the performance of his job; required to perform menial and degrading tasks below his grade, denied opportunities to work overtime, denied promotions and holiday time off, demeaned and humiliated in front of his peers, in retaliation for opposing and making charges regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

90. As alleged above, these actions began occurring before and during the time SYLVESTER offered his testimony as a witness to employment discrimination against Charles Wilson, another CBRE employee in 2015, and when Plaintiff lodged a complaint about the promotion of Andrew.

91. To date, Plaintiff continues to be harassed and retaliated against by his supervisors Joe, Sean, Pedro, Richard, Ernie and Maya, who continue to single Plaintiff out for mistreatment.

92. A reasonable person in Plaintiff's position would find the Defendant's actions materially adverse.

93. Defendant acted willfully and in bad faith.


WHEREFORE, Plaintiff demands judgment against Defendant CBRE for promotion, damages in the nature of lost income compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT IV
## VIOLATION OF THE COLLECTIVE BARGANING AGREEMENT

94. At all material times Plaintiff was represented by the International Union of Operating Engineers, Local 399; ("the Union").

95. The Union is a party to a Collective Bargaining Agreements ("CBA") representing the certain employees of CBRE, including SYLVESTER.

96. The CBA specifies the protocol under which employees may request transfers within job classifications, seek promotions to new job classifications, and obtain overtime and holiday time off opportunities.

97. Under the operative CBA, promotions are granted based on experience and seniority.

98. Seniority is defined as an employee's continuous service in the employee's current job title.

99. CBRE's consistent and deliberate improper conduct, based on race, failed to follow written policies governing promotions, transfers, and overtime, as related to the Plaintiff.

100.    Plaintiff was denied the opportunity to have his grievance timely addressed with the Union related to overtime until Plaintiff gave up and hired legal counsel.

101.    Plaintiff believed that Union protocol required Plaintiff's grievance to be timely addressed.

102.    CBRE deliberately overlooked the seniority of Plaintiff by utilizing a biased selection process to award promotion to their friends and to offer excuses such as you are not what we are looking for or the pretext of lack of experience to justify the failure to offer to Plaintiff a promotion to Chief of Plant Operations, and/or Assistant Chief in violation of the CBA.

103.    As to Plaintiff's grievance related to holiday time off, Plaintiff was informed that he had won his grievance but CBRE did not have enough coverage to give him the time off, which was not the truth.

WHEREFORE, Plaintiff demands judgment against Defendant CBRE for promotion, damages in the nature of lost income compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.


Respectfully submitted,

SYLVESTER WINCE

By;     s/ Calvita J. Frederick
        Attorney for Plaintiff


Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001

16