IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVESTER D. WINCE, | ) |
|       Plaintiff, | ) No. 1:19-cv-01546 |
| vs. | ) Judge Steven C. Seeger |
| | ) Magistrate Judge Jeffrey T. Gilbert |
| CBRE, INC., et al., | ) |
|       Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendants, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, submit the following Memorandum of Law in Support of their Motion for Summary Judgment:

**I.    FACTUAL AND PROCEDURAL BACKGROUND.**

Wince was hired by CBRE in 2010 as a Stationary Engineer when the facilities department at Northwestern Memorial Hospital ("NMH") where he worked was contracted out to CBRE. (Facts ¶ 7.) His employment was governed by collective bargaining agreements between CBRE and the International Union of Operating Engineers of Chicago, Illinois and Vicinity Local 399 ("CBAs"). (*Id.* ¶¶ 8, 21-31.) Wince believes he was discriminated against because of his race (Black) with respect to overtime, promotions, holidays and bonuses, and that he was harassed by being given unfair work assignments, issued a verbal reprimand, and subject to derogatory comments on his lunchbox years ago such that he had no choice other than to resign his employment. (*Id.* ¶¶ 9, 13-31, 46-79.) He also believes he was retaliated against for bringing forward certain complaints and filing an EEOC Charge. (*Id.* ¶¶ 4, 18, 20; *see also* ¶¶ 77, 79.)

The undisputed evidence, however, shows that most of the actions about which Wince complains were taken consistent with the seniority provisions of the CBA and that the individuals selected for promotion over him were far more qualified. (*Id.* ¶¶ 21, 23-42.) Also, there is no

-1-

evidence that anyone in management was aware of Wince's complaints, and Wince indisputably resigned from CBRE for a better job elsewhere. (*Id.* ¶¶ 18-20, 80; *see also* ¶¶ 77, 79.)

On November 5, 2018, Wince filed a Charge of Discrimination with the EEOC alleging (1) harassment and disparate treatment based on race (Black) and (2) retaliation for complaining of race discrimination and acting as a witness for another employee. (*Id.* ¶ 4.) On November 30, 2018, the EEOC issued a Notice of Right to Sue. (*Id.*) Before the Court is Wince's Third Amended Complaint asserting: (1) race discrimination and retaliation against CBRE in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Counts I and III); (2) race discrimination and retaliation in violation of 42 U.S.C. § 1981 against all Defendants (Count II); and (3) constructive discharge against CBRE (Count IV). (Dkt. No. 96/Third Am. Compl.)

## II.   LEGAL STANDARD.

"A district court's grant of summary judgment is appropriate—in fact, is mandated—where [as here] there are no disputed issues of material fact and the movant must prevail as a matter of law." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002).

## III.   LEGAL ARGUMENT.

### A.   Wince's Disparate Treatment and Retaliation Claims Fail.

Wince cannot show that a reasonable factfinder could conclude that his race or any alleged protected activity caused any adverse action. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

#### 1.   Wince's Disparate Treatment Claims Fail (Counts I and II).

Wince cannot establish discrimination under *McDonnell Douglas*, which first requires him to make a prima facie showing that (1) he is a member of a protected group, (2) he met Defendants' legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated persons outside the protected group were treated more favorably. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[1] In a failure to promote context, Wince must show that (1) he was a member of a protected class, (2) he was qualified for the position sought, (3) he was rejected, and (4) someone outside of the protected class was selected who was not better qualified for the positions. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). The burden then shifts to Defendants to show "a legitimate, non-discriminatory reason for the action", after which Wince must establish pretext. *McDonnell Douglas*, 411 U.S. at 802.[2]

> **i.** **Wince Cannot Make Out a Prima Facie Case of Discrimination.**

Wince fails to establish a prima facie case of discrimination, as follows:

*Promotion*. Wince complains of two Chief Engineer roles he was denied in 2016 and two ACE roles he was denied in 2015 and 2016. (Facts ¶¶ 30-42.) The next progression for Wince was Lead Engineer, and he did not have the project management or leadership experience required to catapult from Stationary Engineer to ACE, let alone to Chief Engineer; indeed, Wince only had the minimum qualifications necessary to serve as a Stationary Engineer. (*Id*. ¶¶ 7-12, 30-42.) While Wince claims he was better qualified than the individuals selected, he does not know their qualifications, background or certifications let alone who made the promotion decisions. (*Id*.) *See Daniels v. FRB of Chi.*, No. 98-cv-1186, 2006 WL 861969, at *6 (N.D. Ill. Mar. 31, 2006) (plaintiff "does not know anything about [selected employee's] educational background, qualifications, or prior work experiences."). Indeed, the admissible evidence shows that those who were selected had the best qualifications, skills and ability among the candidates. (*Id*. ¶¶ 7-12, 30-42.) Brudniak (White) was selected for (1) the ACE role in 2015 because he already was serving in an ACE role at the time, was performing well, and had advanced certifications and (2)

---

[1] The Seventh Circuit's ruling in *Ortiz* "does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand." *Ortiz*, 834 F.3d at 766.

[2] "The substantive standards and methods of proof that apply to Title VII race discrimination and retaliation claims also apply to…claims under 42 U.S.C. § 1981." *Liu v. Cook Cnty.*, 817 F.3d 307, 315 (7th Cir. 2016).

the same ACE role in 2016 during a rebid process because he was already performing well in that role, in addition to the reasons that qualified him for the role initially. (*Id*. ¶¶ 31-33, 38-41.) Hernandez (Hispanic) was selected for a Chief Engineer role in 2016 because he had been serving in an ACE role at the time performing well, had significant experience prior to working at CBRE, and held several licenses and advanced certifications. (*Id*. ¶¶ 31-35.) Finally, Walsh (White) had significant leadership and technical engineering skills, including having previously served as Chief Engineer for other companies for over 14 years. (*Id*. ¶¶ 31-33, 36-37.)

*Overtime*. Wince cites to 18 occasions where he believes he was unfairly denied overtime in Controls in 2018. (*Id*. ¶¶ 62-63.) Wince believes Controls should not have been treated as a separate work group under the CBA for the purposes of awarding seniority-based overtime, yet he admits that this was how overtime was being awarded by the Company, that he had officially moved out of Controls in November 2016, and that the individuals who were offered overtime were in Controls. (*Id*. ¶¶ 9, 27, 44, 62-63, 69.) *See Gross v. City of Chi.,* No. 05-cv-547, 2005 WL 3277881, at *4 (N.D. Ill. Nov. 29, 2005) (employee selected for day-shift position was not similarly situated because he had more seniority than plaintiff). And, many of them were Black. (Facts ¶ 62.) *See Johnson v. City of Chi. Bd. of Educ.*, 142 F. Supp. 3d 675, 691 (N.D. Ill. 2015) ("[T]he proposed comparator cannot be someone of the same race."). Also, where Wince accepted only 56 hours of overtime in 2018 but was offered hundreds more, the denial of overtime is not an adverse action. (Facts ¶ 44.) *See Cisneros v. City of Chi.*, No. 00-cv-8059, 2002 WL 31356404, at *6 (N.D. Ill. Oct. 17, 2002) (denial of overtime not an adverse action because plaintiff received substantial overtime and was not entitled to it every time she asked).

*Holidays*. Wince complains he did not receive holidays off in 2016, 2017 and 2018, yet does not dispute that holidays were awarded based on seniority under the CBA. (Dkt. No. 96/Third Am. Compl. ¶ 48; Facts ¶¶ 24-25, 28-29, 46-61.) In 2016, he did not request any

holidays off except New Year's Day, which he took off. (Facts ¶ 46.) In 2017, he completed his holiday request form incorrectly by asking for both holidays and alternate days off. (*Id*. ¶¶ 47-50.) After filing a grievance about Labor Day, Christmas Day and New Year's Day, he was given Labor Day off (and the alternate day after Labor Day) and was told that he could have the other holidays off if alternate coverage could be arranged. (*Id*. ¶¶ 49-55.) For the 2019 holiday schedule, he was approved for New Year's Day. (*Id*. ¶¶ 59-60.) Wince only cites to one individual who was granted holidays and had less seniority than him, but this occurred in 2017 when Wince incorrectly filled out the form, he does not identify anyone who filled it out the way he did and was treated differently, and CBRE even reached out to the individual awarded the holidays to see if he would agree to let Wince have his days off. (*Id*. ¶¶ 47-52.) *See Johnson v. Chi. Transit Auth.*, 699 Fed. Appx. 558, 559 (7th Cir. 2017) (plaintiff could not identify similarly situated employee who engaged in the same conduct). And, several Black stationary engineers with more seniority than Wince had holidays off in these years. (*Id*. ¶¶ 56, 58, 60.) *See DeLaney v. Chertoff*, No. 07-cv-5785, 2008 WL 4773163, at *5 (N.D. Ill. Oct. 30, 2008) (rejecting discrimination claim where plaintiff's alleged comparators were more senior than her, and one was in her same protected class). Nor does the denial of holidays off constitute an adverse action. *See Carr v. Ameritech Corp.*, No. 99-cv-8403, 2002 WL 472244, at *6 (N.D. Ill. Mar. 27, 2002) (denial of preferred vacation dates not adverse action; "not everything that makes an employee unhappy is an actionable adverse action.").

*PTO*. Wince believes his PTO was calculated incorrectly as of early 2019, but he has no evidence to support this. (Facts ¶¶ 66-67.) He met with Nash (Black) to discuss his concern, but they could never figure out how much PTO he was owed. (*Id*.) Nor does Wince have any evidence that others were treated better. (*Id*.) *See Carr*, 2002 WL 472244, at *7 (no evidence of a similarly situated employee treated more favorably with respect to denial of vacation).

*Bonus*. Wince complains that his bonus was reduced in 2018 and 2019. (Third Am. Compl. ¶¶ 27-28.) Yet, the bonus structure changed in 2018 and 2019 and every Stationary Engineer in his work group received the same bonus. (Facts ¶¶ 64-65.) *See Hudson v. Miramed Revenue Grp.*, No. 15-cv-4945, 2016 WL 6948374, at *5 (N.D. Ill. Nov. 26, 2016) ("[t]he only facts regarding similarly situated coworkers indicate that they were treated the same as" plaintiff).

*Tuition Reimbursement*. Wince claims he took a project management course and that Northwestern, not CBRE, reimbursed him. (Facts ¶¶ 43-45.) The fact is that he was reimbursed (pursuant to CBRE's agreement with NMH); thus, he did not experience any adverse action. (*Id.*) *See Oyebade v. Boston Sci. Corp.*, 955 F. Supp. 2d 920, 928 (S.D. Ind. 2013) (no discrimination where plaintiff "was, in fact, reimbursed" for tuition). And, while he complains he could not complete the course because he was denied overtime in 2018, he turned down hundreds of hours of overtime in 2018 and was not entitled to priority overtime in Controls. (Facts ¶¶ 9, 44, 62.)

*Verbal Reprimand*. Wince complains about receiving a verbal warning from Hernandez for failing to respond to a work order. (Facts ¶¶ 13, 15, 73.) However, this is not a tangible job action. *See Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("Unfair reprimands…unaccompanied by tangible job consequences" do not constitute an adverse employment action). Also, Wince was not meeting Hernandez's expectations at the time and while Wince references several other White individuals who delayed in responding to certain events, he does not know if these individuals were disciplined or the circumstances regarding their delays. (*Id.* ¶¶ 13-15, 74.) *Johnson*, 699 Fed. Appx. at 559 (failure to identify similarly situated employee dooms discrimination claim).

*Work Assignments*. Wince's belief that in 2018 or 2019 he was given unfair work assignments fails because he did not suffer a loss of pay, does not know how often or why this happened, and cannot identify others who were treated better. (Facts ¶¶ 8, 74-75.) *See Blackmon*

*v. City of Chi.*, 836 F. Supp. 2d 655, 668 (N.D. Ill. 2011) (plaintiff did not identify similarly situated individuals treated more favorably and his lateral transfer "involved no loss of pay, benefits, or significant changes to working conditions.") Nor can Wince show he was singled out due to his race, as he testified that the work (which was part of his job duties) was eventually re-distributed, including to a White employee. (Facts ¶¶ 8, 74-75.) *See Ziccarelli v. Dart*, 581 Fed. Appx. 563, 567 (7th Cir. 2014) ("being assigned a less-desirable rotation doesn't rise to the level of a significant change in work conditions when other [employees] share these same rotations and job duties").

*Constructive Discharge*. Wince cannot meet the high burden of establishing that he was constructively discharged, which requires that he demonstrate "the abusive working environment was so intolerable that his resignation was an appropriate response." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004). Wince's failure to adduce any evidence to support his hostile work environment claims (*see* Section III.B *infra*) also dooms his constructive discharge theory, because "the working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because an employee is expected to remain employed while seeking redress." *Id.* Wince also has no evidence of similarly situated individuals who were treated more favorably. And, Wince chose to voluntarily resign for a better job. (Facts ¶ 80.) *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1034 (7th Cir. 2004) (plaintiff was not constructively discharged, and therefore did not suffer an adverse employment action).

    ii.    **Defendants Had Legitimate, Nondiscriminatory Reasons.**

Defendants had legitimate, nondiscriminatory reasons for all of their actions. The individuals selected for promotion were indisputably better qualified than Wince. (Facts ¶¶ 30-42.) *See Riley*, 829 F.3d at 894 (plaintiff had no evidence that she was clearly better qualified than individuals selected for promotions). Overtime, PTO and holidays were awarded based on

seniority and in 2017, Wince filled out the holiday request form incorrectly. (Facts ¶¶ 24-25, 27, 28, 47-60, 62.) *See Abulullah v. Welch Vacuum Tech.*, No. 95-cv-5487, 1999 WL 402435, at *1 (7th Cir. June 10, 1999) (awarding positions based on seniority was legitimate, non-discriminatory reason). And, PTO accrued in accordance with the CBA, bonuses were based on a new policy, tuition was reimbursed consistent with CBRE's agreements with NMH, Wince received a verbal reprimand due to responding late to a work order, and the assignments Wince was given were within the scope of his job duties. (Facts ¶¶ 8, 13, 28, 43, 45, 64-67, 73-75.) Wince's self-serving allegations that he disagreed with these actions are insufficient to overcome CBRE's legitimate, nondiscriminatory reasons for taking them. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006).

### iii. Wince Cannot Establish Pretext.

Wince cannot demonstrate pretext. "Pretext…does not mean a mistake, but 'a phony reason for some action.'" *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 640 (7th Cir. 2001) (quotation omitted). Wince has no evidence that any of the reasons for the actions taken were "a lie or completely lack[ing] a factual basis." *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000). His subjective beliefs or the fact that he disagreed with Defendants' decisions are insufficient to survive summary judgment. *See Nwoke v. Univ. of Chi. Med. Ctr.*, No. 16-cv-9153, 2020 WL 1233829, at *13 (N.D. Ill. Mar. 13, 2020) ("Merely disagreeing with an employer's reasons does not make them pretextual.") (citation and quotation marks omitted).

### 2. There is No Evidence of a Pattern or Practice.

Wince has no evidence of a pattern or practice of race discrimination, which requires him to show "by a preponderance of the evidence that race…discrimination was the company's 'standard operating procedure—the regular rather than the unusual practice.'" *Benjamin v. Katten Muchin & Zavis*, 10 Fed. Appx. 346, 352 (7th Cir. 2001); *see also Reeves v. FRB of Chi.*, No. 00-

cv-5048, 2003 WL 21361735, at *13 (N.D. Ill. June 12, 2003) (anecdotal evidence relating to a few employees, without any statistical evidence, failed to establish a pattern and practice claim). Wince has not come forth with any statistical evidence in this matter, and his anecdotes relating only to himself are insufficient. *Id.* Moreover, the evidence shows Black engineers were promoted to and held ACE roles and were awarded overtime and holidays. (Facts ¶¶ 42, 56, 58, 60, 62.)

### 3. Wince's Retaliation Claims Fail (Counts II, III).

Wince alleges retaliation[3] for complaining about discrimination and filing an EEOC charge. To prevail, Wince must show: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal link exists between the two—*Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011)—, which he cannot do.

#### i. Not All of Wince's Complaints Constitute Protected Activity.

Although Wince complained to management, he never complained that any decisions were racially motivated. (Facts ¶¶ 20, 50.) Also, although he alleges that he served as a witness for another employee (Dkt. No. 96/Third Am. Compl. ¶ 104), he admits that he did not speak to anyone (besides his attorney) about this employee. (Facts ¶ 19.) *See Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) ("Vague and obscure 'complaints' do not constitute protected activity."). Thus, these actions do not constitute protected activity.

#### ii. Not all of the Actions Complained of Are Adverse.

Wince's complaints about assignments, a verbal reprimand, overtime, holidays, PTO, and tuition reimbursement are not adverse employment actions. *See* Section III.A.1.i, *supra*. Further, as explained above, Wince was not constructively discharged. *See Williams*, 361 F.3d at 1034 (retaliation claim failed where plaintiff was not constructively discharged).

---

[3] Wince does not specify under which statute he brings his retaliation claim in Count III. (Dkt. No. 96.) For purposes of summary judgment only, Defendants treat the claim as being brought under both Title VII and Section 1981.

### iii. There Is No Causal Link.

Wince cannot establish that his alleged complaints were a "but-for" cause of any adverse actions. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (Title VII retaliation claim requires but-for causation); *Stinson v. Cty. of Cook*, No. 18 C 1614, 2020 WL 6870816, at *9-10 (N.D. Ill. Nov. 23, 2020) (same for Section 1981 claim). Wince alleges he (1) spoke to an outside investigator who asked how African Americans were being treated in 2013 or 2014 about not being promoted, (2) contacted the Ethics Helpline in 2017 (and "not too long ago" followed up) regarding his failure to be promoted because he was Black, and (3) filed an EEOC Charge on November 5, 2018. (Facts ¶¶ 4, 18-19.) Wince, however, has no evidence that any of these actions motivated any decisions made with respect to his employment. (*Id.*) Indeed, *after* he complained, he was given tuition reimbursement to take a project management course. (*Id.* ¶¶ 43, 45.) *See Morrill v. Nielsen*, No. 17-CV-3419, 2018 WL 3141798, at *13 (N.D. Ill. June 27, 2018) (no causal connection where plaintiff was promoted a month after he complained). Also, Wince never complained to management about discrimination and has no evidence that his managers were aware of his complaints. (*Id.* ¶¶ 18-20, 50.) *See King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017) (no evidence that decision makers were aware of protected activity).

Nor does the timing of Wince's complaints—dating back to 2013/2014 and 2017—in relation to any of the alleged actions about which he complains create any inference of causation. Indeed, his alleged constructive discharge occurred approximately one year after he filed his EEOC Charge. (Facts ¶¶ 4, 80.) *See King*, 872 F.3d at 842 (one year gap between alleged protected activity and adverse action insufficient). And, even if Wince were to establish some decisions made close in time to his protected complaints, "[e]vidence of temporal proximity, however, standing on its own, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). Here, all of the

decisions made with respect to Wince's employment were based on legitimate, nondiscriminatory reasons primarily driven by the terms of the CBAs. *See Winfrey v. City of Chi.*, 259 F.3d 610, 618 (7th Cir. 2001) (employer's compliance with CBA was a legitimate, non-discriminatory reason).

### iv. CBRE Has Credible, Non-Pretextual Reasons.

As established in Section III.A.1.iii *supra*, Wince cannot show pretext and thus that an intent to retaliate was the but-for cause of any actions taken against him. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017) ("the true question" of causation is "whether the proffered reasons were a pretext for retaliation"). Thus, his retaliation claim fails.

### 4. Wince's Questions from His Counsel.

To the extent Wince intends to rely on the 100-plus pages of contradictory testimony he gave when his lawyer questioned him during his deposition, this testimony should be disregarded. Similar to relying on an affidavit contradicting admissions in prior testimony, it does not create a genuine issue of material fact. *Howard-Ahmad v. Chi. Sch. Reform Bd. of Trs.*, 161 F. Supp. 2d 857, 864 (N.D. Ill. 2001) (citation omitted) (the Seventh Circuit has been "highly critical of efforts to patch up a party's deposition with their own affidavit.").

### 5. Constructive Discharge is Not an Independent Cause of Action.

In addition to fact that Wince left his job at CBRE for a better one (*supra* Section III.A.1.i), Illinois does not recognize an independent cause of action for constructive discharge. *Washburn v. IBP, Inc.*, 910 F.2d 372, 374 n.1 (7th Cir. 1990). Therefore, to the extent Wince is asserting a separate claim for constructive discharge, this claim fails.

### B. Wince's Harassment Claims Fail (Counts I and II).

To establish harassment, Wince must show (1) the work environment was both subjectively and objectively offensive; (2) race was the cause of the harassment; (3) the conduct

was severe or pervasive; and (4) there is a basis for employer liability. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).[4] There are no facts supporting any of these elements.

*First*, Wince cannot show a subjectively offensive work environment because he does not allege any conduct that materially altered his work environment. *See McDade v. YRC Worldwide, Inc.*, No. 14 cv-1500, 2017 WL 4046345, at *9 (N.D. Ill. Sep. 13, 2017) (no harassment where plaintiffs did not discuss whether the conduct was intimidating or "how it affected their work performance."). He believed he performed his job to CBRE's satisfaction and got along with his managers, and voluntarily left CBRE for a better opportunity. (Third Am. Compl. ¶ 21; Facts ¶¶ 11-13, 15, 80.) *See, e.g.*, *Saitta v. Melody Rae Motors, Inc.*, No. 08-cv-5018, 2009 WL 3462173, at *6 (N.D. Ill. Oct. 23, 2009) (plaintiff "liked or had a good relationship with" managers).

Nor can Wince demonstrate that the environment was objectively hostile, i.e., "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). Courts consider the following in this analysis: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols*, 755 F.3d at 600.

Wince appears to predicate his hostile work environment claims on two types of alleged conduct: (i) offensive comments; and (ii) unfair distribution of work. (And, to the extent that Wince is also relying on any of the conduct set forth in Section III.A, even including these allegations, he cannot establish race-based harassment.) With respect to the comments, Wince

---

[4] Courts analyze harassment claims under Title VII and Section 1981 using the same framework. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

alleges: (1) derogatory statements were written on his lunchbox in 2016 or 2017, (2) Saulig once told him "we don't like you", and (3) management and coworkers (including an African American coworker) called him "Sly" because it "was easier to remember [him] by." (Facts ¶¶ 70, 77-79.) These alleged comments are insufficient to constitute actionable harassment, particularly where Wince does not know who wrote the comments on his lunchbox and where others stopped calling him Sly after he told them he did not like it. (*Id.*) *See, e.g.*, *Hamzah v. Woodman's Food Mkt., Inc.*, 693 Fed. Appx. 455, 458 (7th Cir. 2017) (single comment by plaintiff's supervisor was insufficient to sustain hostile work environment claim); *Kawczynski v. F.E. Moran, Inc.*, 238 F. Supp. 3d 1076, 1086-87 (N.D. Ill. 2017) (nicknames such as "apprentisaurus," "old man" and "old Jeff" did not create hostile work environment).

With respect to assignments, while Wince complains that he was given trainee duties and required to perform repairs from left over shifts, these tasks are well within the job duties of a Stationary Engineer. (Facts ¶¶ 8, 73-75.) *See Hobbs v. City of Chi.*, 573 F.3d 454, 464 (7th Cir. 2009) ("No reasonable jury could conclude that being assigned duties that were part of one's job description…amount to a hostile work environment."). And, one verbal reprimand without a loss in pay does not rise to the level of actionable harassment. *See Sutton v. Ill. DOT*, No. 99-cv-0265, 2003 WL 1719996, at *7-8 (N.D. Ill. Mar. 31, 2003) (infrequent verbal reprimands did not create hostile work environment). Nor does his accidentally being identified as retired in CBRE's system, especially where the error was fixed and did not result in any loss of pay. (Facts ¶¶ 17, 72.) *See Porter v. Saul*, No. 19-cv-3053, 2021 WL 1648116, at *9 (N.D. Ill. Apr. 27, 2021) (incorrectly recorded exam on performance assessment did not constitute harassment).

*Second*, aside from the lunchbox, none of the actions about which Wince complains are race-based. (Facts ¶¶ 13-14, 17, 20, 30-42, 46-79.) *Cole v. Bd. of Trs.*, 838 F.3d 888, 897 (7th Cir. 2017) (the record did "not support a reasonable inference" that the alleged hostility was

"connected to [plaintiff's] race."); *Yancick*, 653 F.3d at 548 (co-worker's mishandling of machinery that nearly injured plaintiff was not racially motivated, but merely an accident).

*Third*, Wince cannot show that any alleged harassment inhibited him from performing his work or "altered the terms and conditions" of his employment. *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 668 (N.D. Ill. 2016). Wince worked for CBRE for 9 years, the conduct of which he complains occurred infrequently, and he voluntarily resigned for a better job. (Facts ¶¶ 7, 13, 17, 34-78, 80.) *See Cesario v. Jewel Food Stores, Inc.*, No. 17-cv-319, 2020 WL 996498, at *28 (N.D. Ill. Mar. 2, 2020) (no harassment where plaintiff resigned to work for a competitor).

Finally, there is no basis for employer liability where Wince did not report the alleged lunchbox comments to CBRE, did not tell anyone that he believed the name "Sly" was racially derogatory, and never complained to management about any race-based mistreatment. (Facts ¶¶ 20, 50, 77-79.). *See Bernier v. Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007) (no liability where employer had no notice of alleged harassment). In relation to his complaint about promotion, CBRE explained to him why he was not selected and worked with him on advancing his career development by paying for a project management course. (Facts ¶¶ 33-41, 43, 45.) *See Otero v. City of Chi.*, No. 10 CV 2284, 2013 WL 530977, at *7 (N.D. Ill. Feb. 6, 2013) (employer can avoid liability where it takes prompt and appropriate corrective action).

    **C.**    **Certain of Wince's Title VII Claims Are Procedurally Barred.**

Wince's Title VII claims rest on several incidents that occurred before January 9, 2018 (300 days before he filed his Charge), including but not limited to the alleged denials of (1) promotions in 2015 and 2016; and (2) holidays in 2016 and 2017. (Facts ¶¶ 18-19, 34-41, 46-56, 70, 77.) These claims are time-barred. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016); 42 U.S.C. § 2000e-5(e)(1). Additionally, conduct that occurred after Wince filed his Charge on November 5, 2018 is beyond the scope of his Charge. *See Conner v. Ill. Dep't of*

*Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). Thus, his 2019 resignation, bonus, verbal reprimand and PTO concern are barred. (Facts ¶¶ 13, 62, 65-67, 73, 74, 80.) *Herron*, 388 F.3d at 303 n.2 (constructive discharge claim barred where plaintiff resigned after filing charge).

### D. Wince Has No Facts to Impose Liability on the Individual Defendants.

Wince's Section 1981 claim against the individual defendants fails because he has no evidence they held any racial animus against him or made decisions about which he complains. (Facts ¶¶ 13, 15, 34-41, 43, 45, 66-74, 76, 78-79.) Instead, Wince alleges:

- *Saulig*. Saulig once said to him in a meeting "we don't like you" but Wince does not know if he said that to anyone else nor is this comment related to his race. (Facts ¶ 70.)

- *Ravelo*. Wince complains that it took Ravelo a month to resolve an issue where Wince was mistakenly identified as a retired employee, but Wince did not suffer a loss of pay or know if it happened to anyone else. (Facts ¶ 72.) *Porter*, 2021 WL 1648116, at *9 (computer error that did not impact plaintiff's employment).

- *Pierz*. Wince believes it was discriminatory that Pierz told him CBRE did not have any leadership positions for him and that he probably would be better off looking outside of CBRE for project management roles, but does not know if Pierz had similar conversations with others and Pierz helped him with the PM course. (*Id.* ¶¶ 43, 45, 68.)

- *Nash*. Wince believes Nash discriminated against him when she told him to excuse a manager who yelled at him (Wince does not know if the manager was disciplined) and could not sort out his PTO bank with him (although she tried). (*Id.* ¶¶ 66, 67, 76.)

- *Holland*. Wince claims there were times he went to Holland about his PTO or being promoted and was "never acknowledged," although he does not know how Holland responded to other employees who went to him with similar issues. (*Id.* ¶ 71.) *See Johnson*, 699 Fed. Appx. at 559 (failure to identify similarly situated employee treated more favorably dooms discrimination claim).

- *Hernandez*. Wince complains that Hernandez was one of the people who called him "Sly" and unfairly issued him a reprimand but as set forth *infra* Sections III.A and III.B, these allegations do not constitute discrimination or harassment.

None of these allegations, however, demonstrate that these individuals harbored any discriminatory intent against him. *Id.*; *see also Sams v. City of Chi.*, No. 13-cv-7625, 2018 WL 4679581, at *7 (N.D. Ill. Sept. 28, 2018) (no evidence individual defendants had racial bias).

## IV. CONCLUSION.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor, dismiss Plaintiff's Complaint with prejudice, award Defendants their costs in defending this action, and grant such additional relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: May 5, 2021

By: s/Jill S. Vorobiev
Jill S. Vorobiev (6237734)
Amy I. Harwath (6324021)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
Tel: (312) 207-1000
Fax: (312) 207-6400
Email: jvorobiev@reedsmith.com
Email: aharwath@reedsmith.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 5, 2021, the foregoing **Defendants' Memorandum of Law in Support of Motion for Summary Judgment** was filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their email addresses on file with the Court.

                                              s/Jill S. Vorobiev
                                              One of the Attorneys for Defendants